Argued November 2, 1971, affirmed April 4, 1972

# WHIPPLE, *Appellant, v.* THE SALVATION ARMY, *Respondent.*

495 P2d 739

*Robert H. Grant,* Medford, argued the cause for appellant. With him on the briefs were Grant & Ferguson, Medford.

*Joel B. Reeder,* Medford, argued the cause and filed a brief for respondent.

HOLMAN, J.

Plaintiff brought this action to recover damages for an injury to his knee incurred while he was playing football. The trial court granted a directed verdict in favor of defendant and plaintiff appealed. The principal issue is whether there was sufficient evidence to go to the jury of defendant's negligence as the cause of plaintiff's injury.

Plaintiff was a 15-year-old boy participating in the Salvation Army Boys Club youth program conducted by defendant in the city of Medford. The defendant employed a Mr. Gene Reagan as supervisor of the group's activities. Reagan took a group of club members, including plaintiff, to a park and there initiated a game of tackle football between the boys who had divided themselves into two teams. Reagan acted as quarterback for both teams. During the course

of the game he sent plaintiff downfield and threw him a pass. Plaintiff jumped, caught the ball, and he was almost immediately tackled, receiving a wrenched or torn knee cartilage from which he suffered residual difficulty.

Plaintiff alleged negligence against defendant in the following particulars:

"1. It allowed plaintiff and other boys playing in said football game to play tackle football without adequate calisthenics, physical exercise and preparation for said playing of tackle football.

"2. It allowed plaintiff and other boys playing in said football game to play such football without adequate uniforms or equipment.

"3. It allowed the playing of tackle football without adequate refereeing or supervision.

"4. It encouraged and allowed untrained boys at an excessively early age, without adequate preparation and training for such a sport, to play tackle football. That these young and inexperienced boys included plaintiff herein."

The evidence was sufficient to justify a jury's finding that the defendant was negligent as alleged in plaintiff's first and second specification of negligence. However, it was insufficient to justify a jury's finding that the plaintiff suffered any injuries as the result of such negligence. The gist of the testimony of plaintiff's experts was that proper training, conditioning and equipment tend to lessen the likelihood of injuries in football games. However, they admitted that injuries still occur despite these precautions and that knee joints are especially vulnerable to damage during football play. There is nothing in the evidence which indicates the injury probably would have been prevented had plaintiff received proper preliminary exercise and adequate equipment.

■ Plaintiff claims, in accordance with the third specification of error, there was evidence that Reagan did not use a whistle to stop the play, and that the resulting "piling on" contributed to plaintiff's injury. Plaintiff's testimony concerning the manner of his injury was as follows:

"Q. Can you describe for the jury what happened when you were injured, Bob?

"A. Well, I went out for a pass. Gene [Reagan] told me to go out. Stand by the goal. Gene threw the ball. I was fairly clear. It was kind of high so I jumped up for it. When I got the ball I think I got hit and fell to the ground. Somebody hit me from behind.

"Q. Now—

"A. Then I fell to the ground and *then somebody hit me from front before I hit the ground. A bunch.* When it was all over there was a bunch of kids on top of me.

"Q. Now, when you were first hit where were you hit?

"A. From behind.

"Q. And then what happened?

"A. Well, then somebody hit me from the front and I hit the ground.

"Q. How did you fall when you fell down?

"A. Well, the back of me.

"Q. You fell on your back?

"A. Well, not first. I hit my backside. You know my —

"Q. Where were your legs?

"A. Oh, about the side of me. You know. I was kind of cockeyed.

"Q. Did anybody else fall on your legs?

"A. Yes.

"Q.  Do you know when in this procedure you were hurt?

"A.  Well, the first time I knew I was hurt was when I was hit from behind.

"Q.  And did it hurt later as other people were piling on you?

"A.  Yes, sir."

          *  *  *  *  *  *

"Q.  And in fact, this particular tackle on this October 23rd, except for your being injured, wasn't really anything unusual except you got hurt?

"A.  Except for the people piling on top of me.

"Q.  Okay. But as I understand your testimony, you got hurt when you were hit, while you were still in the air?

"A.  Yes.

"Q.  When the first guy hit you, is that true?

"A.  Yes, that is true.

"Q.  And that's when you received the injury is when the first guy hit you?

"A.  Yes.

"Q.  So, the piling on and that, you'd already been injured by then?

"A.  Yes. The piling on hurt it even more." (Emphasis ours.)

Despite this testimony, when the piling on occurred remains unclear. Was plaintiff piled upon *after* he had been brought to the ground, or *as he fell* to the ground because several of the boys tackled him almost simultaneously? The following testimony of one of the boys who tackled the plaintiff suggests the latter:

"Q.  Okay. Were you one of the boys that tackled Bob?

"A.  Yes.

"Q.  Do you recall where you tackled him; in other words, what part of your body did you come in contact —

"A.  About the thighs.

"Q. Pardon me?

"A. About the thighs.

"Q. In what position from him; front, back or what?

"A. In the side.

"Q. Okay. Had he caught the ball?

"A. Yes.

"Q. And did anybody else tackle him?

"A. Yes.

"Q. Do you recall who else tackled him?

"A. Billy Meadows, Roger Ricker and Frank Arnold."

\* \* \* \* \* \*

"Q. Did he [Reagan] ever blow a whistle at any time to stop people from piling on?

"A. Not that I know.

"Q. Did he blow any whistle to stop people from piling on Bob after Bob was knocked down?

"A. No. He just ran over there and got us, took, told us to get off.

"Q. There were a bunch of you laying on him, is that right?

"A. About four.

"Q. Could there have been more than four?

"A. The rest of them were all out in the field. Just four of us on top of him.

"Q. The rest of them were gathered around him?

"A. No. The rest of them were scattered out in the field, blocking each other."

\* \* \* \* \* \*

"Q. Who were the ones that piled on after he was down?

"A. *Well, nobody actually went on top of him. We were all angling onto him from all sides.*

"Q. Well, did two of you tackle him and then the other two come as he was down. Is that what happened?

"A. Well, like one hits him and the other two or three, whatever it was, come in right after Frank Arnold hit him in front." (Emphasis ours.)

The only other boy who participated in the particular incident and who gave evidence in the case also testified that four boys had tackled plaintiff.

Plaintiff's younger brother, who saw the incident in question, testified as follows:

"A. Well, my brother went out for a pass and, and the boy threw it and then these two boys from each side hit him.

"Q. Then did anybody else then fall on him after that?

"A. Yes.

"Q. How many other people, do you know?

"A. About 10 or 15.

"Q. Several of the other people fell on him?

"A. Yes.

"Q. Do you know how many, really?

"A. No.

"Q. Did you hear any whistle of any kind? Answer out loud.

"A. No."

As is evident, this witness finally decided he did not know how many boys were on plaintiff, nor did he ever say that anyone piled on his brother *after he was down*. He testified only that others "fell" on plaintiff after he was hit on each side. The ages of all of the boys involved in the game were not given; however, it is known that plaintiff was fifteen, whereas the two witnesses who had helped make the tackle were only ten and twelve years of age. It is not surprising

that it would take more than one of these boys to bring plaintiff down. Although the question of sufficiency of the evidence at this point is a close one, we cannot say the trial judge was incorrect in not submitting the issue to the jury.

■ The last charge of negligence, in part, alleges inadequate preparation and training of the boys, including plaintiff, who were participating in the game. Such a claim is insufficient to form a basis for a recovery for, despite the evidence of both inadequacies, there is no proof that either was the cause of plaintiff's injury. However, the specification goes further and alleges that defendant was negligent in allowing and encouraging boys of plaintiff's age to play tackle football.

The question arising from the latter contention is whether defendant owed a duty to plaintiff not to allow or encourage him to play tackle football. We hold that defendant owed no such duty as long as plaintiff was aware of the risk. It is a common practice in our schools and elsewhere to encourage boys even younger than plaintiff to engage in organized tackle football. Plaintiff submits that in these instances the boys are provided adequate preparation, training and equipment. So they are; but there is no showing in the present case that plaintiff's injury resulted from the lack of any of these precautions. Moreover, there is no evidence here that plaintiff was overmatched by the other players. Had a 10-year-old boy been injured as the result of being encouraged to play with 15-year-olds, perhaps the matter would have a different outcome.

Defendant's duty can be treated in the context of assumption of risk in its primary sense. Plaintiff

correctly contends that because there is an inherent danger of injury in football, defendant did owe him a duty not to allow or encourage him to play unless plaintiff realized the danger involved. He then argues that there is sufficient evidence to create a jury question on whether he had such realization. Plaintiff testified as follows:

"Q. And, in other words, you'd be involved in tackling and being tackled all this particular year and the year before?

"A. Yes, sir.

"Q. And it was the same type of tackling that had been going on?

'A. Yes.

"Q. Now, were you aware that you might get hurt in tackling or getting tackled?

"A. I didn't think I'd get hurt very bad.

"Q. But you knew you could get hurt?

"A. Probably get a scraped elbow or maybe get kicked in the nose. Something like that.

"Q. Or the knees or bumps and bruises?

"A. I never thought I'd get my knee twisted out of place, no, sir.

"Q. But you at least knew that you could get hurt in playing tackle football?

"A. You could get hurt, yes.

"Q. And even though you knew this you enjoyed playing and continued to play?

"A. Yes. Because I didn't think I'd get hurt that bad.

"Q. It was just a question of how bad you could get hurt that you hadn't considered?

"A. Yes.

"Q. But you knew you could get hurt?

"A. I could get a little scrape and get hurt falling down on the ground."

■ We hold as a matter of law that a 15-year-old boy, without evidence of mental deficiency or untoward seclusion from life's experiences common to boys of that age, sufficiently appreciates the dangers inherent in the game of football so that he assumes the risk thereof when he plays. In the present case, defendant created a hazard, that of playing football, and plaintiff voluntarily exposed himself to that hazard. *See Franks v. Smith,* 251 Or 98, 100-03, 444 P2d 954 (1968); *Vendrell v. Sch. Dist. No. 26C, Malheur Co.,* 233 Or 1, 19, 376 P2d 406 (1962). Of course, he does not assume the risk of negligent conduct by one who supervises his play. However, there must be evidence that such conduct was the cause of plaintiff's injury before a case is made for jury consideration.

The judgment of the trial court is affirmed.

TONGUE, J., concurring.

I concur in the result of the majority opinion because I agree that this was a case of assumption of risk as that term was applied in *Vendrell v. Sch. Dist. 26C, Malheur Co.,* 233 Or 1, 18-19, 376 P2d 406 (1962), and in *Franks v. Smith,* 251 Or 98, 101, 444 P2d 964 (1968). I do not concur, however, with that portion of the opinion which undertakes to consider the sufficiency of the evidence offered in support of plaintiff's various specifications of negligence. In my opinion, that evidence was sufficient to present a jury question.

McAllister, J., concurs in this opinion.