Argued and submitted March 2, reversed June 30, petition for rehearing denied, opinion modified October 6, 1981 (291 Or 703, 634 P2d 241)

BLAIR,
*Respondent,*
*v.*
MT. HOOD MEADOWS DEVELOPMENT
CORPORATION,
*Petitioner.*

(CA 13331, SC 27330)

630 P2d 293

Darrel L. Johnson, Portland, argued the cause for petitioner. With him on the briefs were I. Franklin Hunsaker, and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

Leslie M. Roberts, of Kell, Alterman & Runstein, Portland, argued the cause and filed briefs for respondent.

Before Denecke, Chief Justice, and Tongue, Linde, Peterson, Tanzer and Campbell, Justices.

CAMPBELL, J.

Tongue, J., filed an opinion which concurred in part, dissented in part.

Peterson, J., filed a specially concurring opinion.

## CAMPBELL, J.

This is an action in negligence brought by plaintiff as a result of an injury he sustained while skiing at defendant's ski facility at Mt. Hood.

Plaintiff, a 28-year-old experienced skier, and a companion had spent a morning skiing on runs prepared by defendant at its facility. The weather on the day of the accident was overcast with mist, causing poor visibility and creating a "flat light" effect, limiting a person's ability to perceive variations in the depth and other contrasts or contours in the snow. Plaintiff was injured when he chose to return to the lodge by way of a run that he had never skied. From the starting point of the North Canyon run, the lodge was visible straight ahead down the slope. However, the run was not a straight path to the lodge. The base of the run formed a plateau where the run branched sharply to the right, at a point known as "Eric's Corner," and then to the left, crossing a culvert over a creek to the lodge. Plaintiff, unaware of the curves in the run, skied straight ahead toward the lodge and off the intended run, falling into the creek ravine separating the ski area from the lodge, injuring his right arm and shoulder.

The plaintiff's first amended complaint alleged that the defendant was negligent:

1. In failing to warn plaintiff by flags or other markers of the concealed creek-ravine.

2. In creating a hazardous condition by plowing snow in a manner that created a ski run directly into the hidden creek-ravine.

3. In failing to mark the creek-ravine promptly after receiving notice from other skiers that the ski run was dangerous.

4. In failing to close off the area in which the plaintiff was skiing.

The defendant, by way of an affirmative defense in its answer, alleged that the plaintiff was negligent in that he did not keep a proper lookout, was skiing too fast, and did not use the regular and normal ski paths.

The jury returned the following special verdict:

"1. Was Defendant negligent in one or more of the respects claimed in Plaintiff's Complaint which caused damage to Plaintiff?

"ANSWER: _____ No_____"

Judgment was entered for the defendant, and the plaintiff appealed to the Court of Appeals, assigning as error the giving of the following instruction by the trial court:

"Sports activities involve some risks. Every person who takes part in a sport accepts and submits himself to the dangers that are inherent or a reasonable part of that sport."

Plaintiff contended on appeal that the instruction should not have been given because it was too broad a statement of the principle of assumption of risk.[1]

ORS 18.475(2) provides:

"The doctrine of implied assumption of risk is abolished."

The Court of Appeals held that the type of assumption of risk involved in this case was distinguishable from "implied assumption of risk" abolished by ORS 18.475(2) and was therefore still a recognized doctrine in Oregon. The Court of Appeals reversed and remanded for a new trial because the instruction given was too broad a statement of the principle of assumption of risk in that it failed to inform the jury that a sports participant assumes only those risks which are "necessary to the sport and *are known to him.*" (Original emphasis.) The defendant ski operator petitioned for review of this decision. We reverse the Court of Appeals.[2]

We first proceed to consider whether any instruction concerning risks assumed by virtue of participation in

---

[1] The plaintiff's second contention that the instruction should not have been given was raised for the first time on appeal and therefore will not be considered by this court. *City of Portland v. Hoffman Const. Co.,* 286 Or 789, 596 P2d 1305 (1979).

[2] The plaintiff in the Court of Appeals also assigned as error the trial court's refusal to instruct the jury that the plaintiff was an invitee as a matter of law. The Court of Appeals held that the plaintiff's status was a question of fact to be determined by the jury. The plaintiff has not cross-petitioned this court to review that ruling.

sports activities is proper since the 1975 enactment of ORS 18.475(2).[3]

We interpreted ORS 18.475(2) and its relationship to the comparative fault scheme (ORS 18.470) in *Thompson v. Weaver,* 277 Or 299, 560 P2d 620 (1977). We pointed out in that case that prior to the adoption of ORS 18.475(2) our decisions had recognized the distinction urged by Harper and James[4] between "primary" and "secondary" assumption of risk. We noted that an earlier version of ORS 18.470, which establishes the comparative fault scheme, had abolished the doctrine of assumption of the risk in its secondary sense only, as a species of contributory negligence. We suggested generally that the later enactment of ORS 18.475(2) was intended to abolish implied assumption of risk as a distinct defense in both its primary sense (as a counterpart to no duty) and in its secondary sense (as a type of contributory negligence). *See also Hornbeck v. Western States Fire Apparatus, Inc.,* 280 Or 647, 572 P2d 620 (1977).

We then limited our interpretation of the effects of ORS 18.475(2) in eliminating the *complete bar* to negligence, formerly imposed by the doctrine of implied assumption of risk, to the situations described below:

"* * * The statute makes no distinction whether a plaintiff's implied assumption of risk is regarded as a form of negligence on his part or whether his implied assumption of the risk is claimed to excuse defendant for risks that would be his 'fault' vis-a-vis other persons in plaintiff's position. Implied assumption of the risk is abolished as a basis for *barring* recovery on either theory." (Emphasis supplied.) *Thompson v. Weaver, supra* 277 Or at 304.

Applying this interpretation to the facts, *Thompson* refused to allow a defendant to circumvent the comparative fault scheme in ORS 18.470 and the effects of ORS 18.475(2) by a claim that he owed the plaintiff "no duty" of due care under the circumstances due to plaintiff's conduct in voluntarily getting under a mobile home which had been improperly raised by jacks. An absence of duty on the part

---

[3] 1975 Or Laws, ch 599, § 4.

[4] 2 Harper and James, The Law of Torts 1162, § 21.1 (1956).

of the defendant, like the bar formerly raised by the doctrine of assumption of risk, would have completely defeated plaintiff's recovery for negligence. We held that since the enactment of ORS 18.475(2) this type of conduct of the plaintiff may reduce liability, if at all, under the relative fault formula in ORS 18.470 *only* and is no longer a complete defense to a negligence action even when recharacterized as an "absence" of or limitation upon duty.

We specifically left for the future the implications of our analysis of ORS 18.475(2) for situations where a "plaintiff has agreed to join in an activity (such as a sporting event) in which the particular hazard is a known element of the activity even when properly conducted, i.e., when dangerous conduct that would be 'fault' in other contexts is not fault at all." *Thompson v. Weaver, supra* 277 at 305.

In *Hornbeck v. Western States Fire Apparatus, supra* 280 Or at 651, this court said:

> " * * * According to *Thompson* [277 Or 299, 560 P2d 620 (1977)], the elimination of applied assumption of risk leaves only a defense based on some form of knowing consent or waiver expressed between the parties, or perhaps based on plaintiff's agreement to join in a sport or similar activity in which the particular risk is a known element of the activity when properly conducted. * * *"

The case under consideration directly involves the question left open in *Thompson* and *Hornbeck*.

We now turn to the statutory language and to the legislative history of ORS 18.475(2) to determine its effect upon the type of defense whose continued existence was left open in the *Thompson* and *Hornbeck* cases. ORS 18.475(2) was enacted as part of a bill amending the comparative fault scheme in ORS 18.470. A memorandum to the House Judiciary Committee from Representative Frohnmayer explained the implications of ORS 18.475(2) for the comparative fault scheme as follows:

> "Section 5 abolishes the doctrine of implied assumption of the risk. *Ritter v. Beals,* 225 Or 504 (1961) subsumed under contributory negligence the form of assumption of the risk in which plaintiff voluntarily and unreasonably encounters a known risk; this type of assumption of the

risk is unaffected by section 5 and should be pleaded as contributory negligence. Plaintiff's reasonable assumption of the risk or 'implied consent' is no longer a defense. This resolves the anomaly arguably possible under present law that plaintiff's reasonable conduct might bar recovery completely while unreasonable conduct leads to the possibility of partial recovery." (Footnotes omitted.)

The memorandum added in footnote 10, "Of course if defendant has no duty toward the plaintiff there is no liability."[5]

Our analysis of ORS 18.475(2) is confused by our past decisions which have lumped together several widely different defenses under the common label of assumption of risk. The lack of label also makes it difficult to determine which aspects of the doctrine the legislature intended to eliminate in abolishing "implied" assumption of risk.[6]

---

[5] House Judiciary Committee, Minutes of Hearings on SB 797, May 28, 1975 (Appendix G at pp 2-3).

[6] Prior to the 1975 enactment of ORS 18.475(2), no Oregon case had defined the term "implied assumption of risk." Commentators disagree as to fact situations to which the label is properly applied, although all who utilize the label seem to apply it to all *recognized* types of assumption of risk, other than "express" assumption of risk. The controversy among the commentators centers around the types of fact situations (other than "express" assumption of the risk) to which the label "assumption of the risk" is appropriately extended. For example, Restatement (Second) of Torts, § 496C, comments b, c, d, e, and f, applies the label to three types of situations, all of which involve subsequent conduct of the plaintiff in voluntarily encountering a subjectively known and comprehended risk created by prior "tortious" conduct of a defendant, from which plaintiff's consent to assume the risk is implied. Prosser extends the label to several similar situations. More specifically, he also includes under the designation of "implied" acceptance of risk the situation in which a plaintiff voluntarily participates in a sporting event, implying from the voluntariness of the participation his consent to assume all the "ordinary" and "obvious" risks of the game. Prosser, Law of Torts 445-446, n 64 (4th ed 1971). Like the Restatement, Prosser's analysis also treats the defendant's conduct in conducting the activity as a form of prior "negligence" on his part, excused as to the plaintiff by his consent. In contrast, Professor Keeton identifies five separate concepts to which are commonly applied the label of "implied" assumption of the risk. Keeton, *Assumption of Risk in Products Liability Cases,* 22 La L Rev 122, 127 (1961). He includes under this label not only the fact situations included by the Restatement and Prosser, but also more extreme forms labeled "associational" or "imposed" assumption of risk. He concludes that in these more extreme forms, the phrase "implied" assumption of risk is simply "descriptive" of a legal conclusion that *a defendant* has "no duty" under the circumstances or has not "breached" his duty often without reference to plaintiff's manifestations of consent to or appreciation of a particular risk or hazardous condition or association causing injury. Keeton notes that judicial statements that a plaintiff in a given type of case assumes risks that are "obvious" generally rest upon one of these less consensual senses of "implied" assumption of risk.

Prior to the enactment of ORS 18.475(2), some of our decisions utilized the concept of implied assumption of risk in analyzing the negligence cases involving risks of participation in dangerous sports activities described in *Thompson. See Vendrell v. Sch. Dist. 26C, Malheur Co.,* 233 Or 1, 376 P2d 406 (1962); *cf. Franks v. Smith,* 251 Or 98, 444 P2d 954 (1968); *Whipple v. The Salvation Army,* 261 Or 453, 495 P2d 739 (1972). These decisions typically focused upon the relationship between the plaintiff and the hazard in finding adequate grounds for implying plaintiff's consent to the hazard causing injury and for relieving the defendant operator of the activity from liability.[7] In the *Vendrell* case the plaintiff brought an action against his high school football coach alleging negligence in that he was "tackled hard" by the opposing team. We explained our denial of recovery by focusing upon the plaintiff's level of experience and noting that he had assumed all the "inherent and obvious" risks of the game. In the *Whipple* case we again denied recovery in a similar fact situation because we concluded from the plaintiff's level of experience and age that as a matter of law he appreciated the risk of injury from being tackled.

■ We conclude that in flatly abolishing the "doctrine of implied assumption of risk" the legislature intended to abolish all use of the concept of plaintiff's assumption of risk in negligence cases (other than in its "express" sense)[8] whether as a defense to defendant's prior "tortious" conduct or as a shorthand phrase for defendant's lack of duty under the circumstances or breach of duty.

We used the concept of plaintiff's assumption of the risk in our prior decisions involving risks present in sports activities even when properly conducted as a descriptive phrase for the legal conclusion that defendant had no duty under the circumstances or had breached no duty

---

[7] Comment, *Comparative Negligence Legislation: Continuing Controversy Over the Doctrine of Assumption of the Risk in Oregon,* 53 Or L Rev 79 (1973), published before enactment of ORS 18.475(2), discusses utilization of the concept of assumption of the risk in our previous decisions.

[8] We need not here determine the continued applicability or parameters of a defense of "express" assumption of risk. For illustration of the concept *see* Restatement (Second) of Torts, § 496B and explanatory comments, and Keeton, *Assumption of Risk in Products Liability Cases,* 22 La L Rev 122, 124 (1961).

under the circumstances in failing to take precautions against the risk. For example, in *Vendrell* we suggested that the plaintiff's being "tackled hard" established no negligence on the part of the defendant because no one "expects" a football coach to remove such risks from the game. In *Franks v. Smith, supra,* decided before enactment of ORS 18.475(2), a participant in motorcycle hillclimbing brought an action in negligence against a fellow participant whose motorcycle lost traction and collided into plaintiff. We suggested that the case could have gone to the jury stated strictly in terms of plaintiff's burden to prove "duty" and "negligence," but approved an instruction stating the problem in terms of "assumption of risk" for the purpose of more fully educating the jury.

In these cases, the proper or reasonable conduct of the activity under the circumstances did not require the defendant to take precautions against the particular element causing injury. The defendant's conduct had conformed to the standard of care governing those conducting such a sports activity and therefore the defendant had breached no duty owed to the plaintiff. *See Sunday v. Stratton Corp.,* 136 Vt 293, 390 A2d 398 (1978).

Due to the enactment of ORS 18.475(2), the focus of the analysis in the *Vendrell* type of negligence case has shifted entirely to the defendant's duty under the circumstances and should no longer be discussed in terms of the plaintiff's assumption of the risk.

Since the adoption of ORS 18.475(2), assumption of risk as a separate or independent doctrine or defense is therefore no longer available to defendants in either the *Thompson* or *Vendrell* fact situations. The same facts which formerly were analyzed utilizing the doctrine of assumption of risk may nevertheless continue to be relevant in reducing or eliminating recovery for negligence. Conduct of the plaintiff in voluntarily and *unreasonably* encountering a risk created by the defendant's conduct, which was sometimes labeled "secondary assumption" of risk but was in reality a form of contributory negligence, may now be compared to negligent conduct of the defendant in allocating relative fault and apportioning damages under the comparative fault scheme in ORS 18.470. *Baccelleri v. Hyster Co.,* 287 Or 3, 9, 597 P2d 351 (1979).

Footnote 10 of Rep. Frohnmayer's memo indicates that a defendant may still have a *complete defense* [9] to liability for negligence independent of the now eliminated doctrine of implied assumption of risk, if plaintiff cannot establish the defendant breached a duty he owed under the circumstances. Thus, the fact that a sports participant's injury results from a risk which is an element of a sport even when properly conducted may continue to defeat recovery for negligence because the defendant's duty in the context of the sport may not extend to protecting against such risks.

■ Our analysis leads us to conclude that a separate instruction focusing upon the plaintiff's implied assumption of the risk is no longer proper in negligence actions because ORS 18.475(2) has abolished the doctrine in every sense. Instead, the jury instructions in negligence cases involving injuries resulting from the normal risks of a sport (e.g., the *Vendrell* case) should focus upon the plaintiff's burden to prove the elements of negligence (especially the defendant's duty and breach of duty causing plaintiff's injury) in order to hold the defendant liable.

■ Because the instruction in question is short and its interpretation is necessary to the result in this case, it is repeated:

"Sports activities involve some risks. Every person who takes part in a sport accepts and submits himself to the dangers that are inherent or a reasonable part of that sport."

Although the instruction does not use the words "assume" or "assumption," both parties have treated it as an "assumption of risk" instruction. The defendant has not attempted to plead that the plaintiff was at fault by "voluntarily and unreasonably" encountering a risk created by the defendant's conduct. Therefore, it is not necessary to consider if the instruction deals with assumption of risk in its "secondary sense" or as "contributory fault." The instruction is only proper if it defines the defendant's duty to the plaintiff.

---

[9] We here use the term "defense" in the sense of any argument which will defeat recovery, including the plaintiff's failure to prove an essential element of the cause of action.

The instruction should not have been given by the trial judge because it focuses upon the plaintiff's implied assumption of the risk. It is not couched in the terms of the defendant's duty.

It must be determined if the plaintiff's exception to the instruction was sufficient to point out the error to the trial court. The plaintiff's exception was as follows:

"* * * and in addition the Plaintiff would object to the instruction concerning the — I think the instruction went to the effect that all sports include risk. That was not the part that was objectionable. The part that was objectionable was that Plaintiff assumes any risk inherent in a sport.

"I believe that amounts, in essence, if the jury follows it, to a directed verdict for the Defendant. There is no question the skiing into a creek-ravine is an inherent risk. I don't think those are the risks that legally the Plaintiff assumes.

"I think he assumes those risks inherent which are the type intended for the type apparent or the type that are obvious. I think that was the instruction requested by the Defendant and I think at that point that is probably an accurate statement of law, but I think the Court instructed the jury and we would object to the instruction that the Plaintiff assumes any risk inherent in a sport.

"Again, I think that amounts to a directed verdict and there is virtually no way to correct it. I think that particular instruction is, it was my understanding, to be any risk inherent or which is apparent or the type intended.

"At this point I don't think we would have objected by leaving that out. I think it would be a directed verdict."

A fair summary of the plaintiff's exception is: The plaintiff objected because the jury was instructed that the plaintiff "assumed any risk inherent in the sport" and should have been instructed that the plaintiff assumed only those risks which were "apparent" and "obvious."

This case was tried in January, 1979. At that time ORS 17.510 provided, in part:[10]

"No * * * instruction given to a jury in the circuit court shall be subject to review upon appeal unless its error, if

---

[10] ORS 17.510 was repealed and in effect replaced by ORCP 59(H) as of January 1, 1980.

any, was pointed out to the judge who gave it and unless a notation of an exception was made in the circuit court."

The plaintiff did not point out to the trial court that the instruction was error because it focused upon the plaintiff's implied assumption of risk and was not in the terms of the defendant's duty. The plaintiff's exception was for the wrong reason. *Brigham v. Southern Pacific Co.,* 237 Or 120, 390 P2d 669 (1964).

Reversed.

**TONGUE, J.,** concurring in part, dissenting in part.

I concur in the analysis by the majority leading it to the conclusion that "a separate instruction focusing upon the plaintiff's implied assumption of risk is no longer proper in negligence actions" and that "the jury instructions in negligence cases involving personal injuries resulting from normal risks of a sport * * * should focus upon the plaintiff's burden to prove the elements of negligence (especially the defendant's duty and breach of duty causing plaintiff's injury) in order to hold the defendant liable." I also concur in the holding by the majority that the instruction given in this case was improper and should not have been given.

I do not concur, however, in the further holding by the majority that plaintiff is not entitled to a new trial because of the error in the giving of that instruction for the reason that plaintiff's exception to the instruction was not sufficient. If this were a subject on which the law has been well settled, I would agree with the majority. As evident from the opinion by the majority, however, this is not a subject on which the law has been well settled. On the contrary, even decisions by this court on the subject of assumption of risk have been confusing, if not conflicting.

At the very least, plaintiff's exception was sufficient to raise the question whether the risks which are either assumed by the plaintiff or which are risks as to which defendant owes no duty to the plaintiff must be risks whih are either obvious risks or risks which were known to the plaintiff (as contended by plaintiff), or whether such

risks include any risk "inherent" in the sport (as contended by defendant and as held by the trial court in giving its instruction in this case).

Consistent with that contention at the time of trial, plaintiff's primary contention on appeal to the Court of Appeals was that the instruction was in error "because it failed to limit assumed risks to inherent risks which are necessary to the sport as properly conducted and which are known or obvious," citing *Hornbeck v. Western States Fire Apparatus,* 280 Or 647, 651, 572 P2d 620 (1977), among other cases and authorities. The primary basis for the decision by the Court of Appeals was also that "the participant assumes only those risks which are necessary to the sport *and are known to him."* (48 Or App at 113). Similarly, the primary basis for defendant's petition for review was that the Court of Appeals erred in holding that a ski area operator owes the skier a duty to protect him from risks that are not only inherent in the sport, but obvious to the skier unless he actually knew of the particular risk.

Thus, whether stated in terms of risks assumed by a skier or risks as to which a ski area operator has no duty to the skier, the question raised by plaintiff's exception at the time of trial, by plaintiff's appeal to the Court of Appeals, by the decision of that court and by defendant's petition for review, was the question whether such risks must be obvious risks or risks known to the skier (as contended by plaintiff), or whether such risks include all risks which are inherent in the sport (as contended by defendant).

This was the question which both parties asked this court to decide and was the question which provided the primary reason why this court allowed defendant's petition for review because of its public importance. The opinion by the majority, however, refuses to address and decide this question upon the ground that plaintiff's exception was insufficient to an instruction which the majority holds to have been erroneous.

For reasons previously stated, I believe that plaintiff's exception was sufficient to raise this question, and I must respectfully dissent from the refusal by the majority to decide this question.

**PETERSON, J.,** specially concurring.

I read the majority opinion as follows:

1.  Implied assumption of risk, as a bar to plaintiff's recovery, or to reduce recovery, independent of comparative fault, is abolished. ORS 18.475(2).

2.  A defendant "* * * may still have a *complete defense* to liability for negligence independent of the now eliminated doctrine of implied assumption of risk, if plaintiff cannot establish [that] the defendant breached a duty he owed under the circumstances. Thus, the fact that a sports participant's injury results from a risk which is an element of a sport even when properly conducted may continue to defeat recovery for negligence because the defendant's duty in the context of the sport may not extend to protecting against such risks." 291 Or at 302.

3.  A jury is never to be instructed on the doctrine of implied assumption of risk in spite of the fact that "* * * the same facts which formerly were analyzed utilizing the doctrine of assumption of risk may nevertheless continue to be relevant in reducing or eliminating recovery for negligence. * * *" 291 Or at 301.

4.  Any jury instruction relating to the plaintiff's right to recover for injuries "* * * resulting from the normal risks of a sport * * * should focus upon the plaintiff's burden to prove the elements of negligence (especially the defendant's duty and breach of duty causing plaintiff's injury) in order to hold the defendant liable," not upon the plaintiff's assumption of risk. 291 Or at 302.

I have no quarrel with those rules, but I fear that rule 4 may prove difficult of application. The reason is this. In many situations the boundaries of the defendant's duties to the plaintiff and the boundaries of the plaintiff's own duty of due care turn upon the knowledge of potential harm which a reasonably prudent person in the plaintiff's position would have under the same or similar circumstances. For example, in *Katter v. Jack's Datsun Sales, Inc.,* 279 Or 161, 566 P2d 509 (1977), we approved the giving of this instruction:

" 'A possessor of land is subject to liability for physical harm to his invitee caused by a condition of land if he first

knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitee; and second, he should expect that *they will not discover or realize the danger or will fail to protect themselves against it;* and third, fails to exercise reasonable care to protect the invitee against the danger.' " 279 Or at 166-67. (Emphasis added.)

There, the possessor's liability for injury to invitees arising from the condition of land was determined in part by whether the invitees would "discover or realize the danger or * * * fail to protect themselves against it." Another way of saying the same thing might be to say that the invitees assume the risk of harm from conditions of which a reasonably prudent person would be aware or which are known to such person.[1] Under the majority opinion, an instruction in the language of *Katter, supra,* would be proper; but an instruction expressed in terms of assumption of risk would not be.

The same situation exists in a "failure to warn" case. Oregon State Bar Uniform Instruction No. 160.10 concerns the "Duty to Warn" in an Employer's Liability Act case and provides:

"When an employer has actual knowledge or in the exercise of reasonable care would have had knowledge of hazards or dangers, the employer is then under the duty of warning an employee of such hazards or dangers as would not be apparent to an employee in the exercise of reasonable care."

In such a case, the same factor — whether a person in the plaintiff's position would be aware of the danger — may well determine (1) whether the defendant had a duty to warn, and (2) whether the plaintiff would be contributorily at fault for failure to keep a proper lookout or for

---

[1] Compare this statement from *McHenry v. Howells,* 201 Or 697, 702, 272 P2d 210 (1954) (quoting from 65 CJS 495, Negligence § 35d):

" 'A mere licensee takes the property or premises on which he enters as he finds them, enjoys the license subject to its concomitant perils, and, although he does not necessarily assume all risk of injury by going on another's premises, *he does assume all the ordinary risks or dangers incident to the condition of the premises or property, * * *.' "

*McHenry v. Howells, supra,* was decided prior to the Oregon cases cited in the majority opinion.

unreasonably exposing oneself to hazards which were known to the plaintiff or for otherwise failing to recognize the risk of harm.

In the case at bar, the defendant is not responsible for injuries arising from risks which are an inherent and obvious risk of the sport. For example, a skier who sustains injury because a hill is steep or because snow is slippery would normally be without recourse, because those factors are among the factors which make skiing possible. They are an inherent and obvious part of the sport. Under the majority opinion it is not proper to instruct the jury that the skier "submits himself to the dangers that are inherent" in the sport. Would it be incorrect to say that the operator is not liable for injuries arising from factors which are an inherent part of the sport?

The extent to which hazards are or are not apparent to the reasonably prudent skier may determine (1) the ski operator's liability under the specifications of negligence charged (see page 295 of the majority opinion) and (2) the skier's contributory fault. The articulation of instructions which entirely exclude such assumption of risk overtones as the instruction at bar possesses may prove to be difficult when "* * * the same facts which formerly were analyzed utilizing the doctrine of assumption of risk * * *" (291 Or at 301) continue to be relevant in delineating "* * * the defendant's duty in the context of the sport * * *." 291 Or at 302.