## C.H. SAVAGE COMPANY,
*Respondent,*

*v.*

## MULTNOMAH COUNTY,
*Appellant.*

(No. A7905-02254, CA A20178)

646 P2d 639

John B. Leahy, County Counsel for Multnomah County, Portland, argued the cause for appellant. With him on the briefs were Richard C. Busse, Chief Deputy County Counsel, and Denise Francis, Deputy County Counsel, Portland.

Ridgway K. Foley, Jr., Portland, argued the cause for respondent. With him on the brief were Schwabe, Williamson, Wyatt, Moore & Roberts, Janet M. Schroer, and Roland F. Banks, Jr., Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

This case involves a dispute over a contract between plaintiff and defendant for the painting of the Broadway Bridge in Portland. Plaintiff sought to recover additional expenses incurred under theories of implied warranty, breach of contract and *quantum meruit.* From a judgment entered on a jury verdict in favor of plaintiff for $212,617.86, defendant appeals. We reverse and remand.

In March, 1978, defendant advertised for bids to do maintenance painting on the bridge. Mr. Savage, plaintiff's president, and his supervisor made a physical inspection of the bridge. Mr. Savage had extensively inspected the bridge in 1962 when he had unsuccessfully bid on a previous Broadway Bridge painting contract let that year. From the 1978 inspection and the 1962 notes, Savage arrived at plaintiff's bid. Plaintiff was the low bidder and was awarded a $458,651 contract. The contract incorporated the "Standard Specifications for Highway Construction" of the Oregon State Highway Division (the "red book") as well as special provisions detailing the project requirements.

Work under the contract began in May, 1978. Plaintiff encountered problems with the method it used in preparing the bridge surface. The 1962 painting had not been performed according to specifications for that job, and as a result plaintiff encountered more rust and poorer paint conditions than it had anticipated. Disputes arose about the progress of the work and the contract specifications. Plaintiff continued to perform under the contract, and the job was completed in August, 1979.

Plaintiff commenced the present action to recover additional costs incurred in completing the job and lost profits. The core of plaintiff's complaint, although designated under three separate theories, was that defendant knew the 1962 job had not been completed according to specifications and had failed to disclose this to defendant. Plaintiff contended that the method defendant designated for bridge surface preparation was inadequate to perform the contract properly. Further, plaintiff complained

that defendant's inspections were unreasonable and more excessive than contemplated. Defendant's answer set out numerous contract provisions as affirmative defenses to limit or deny plaintiff's claims.

The essence of defendant's appeal is that erroneous court rulings prejudiced the presentation to the jury of defendant's affirmative defenses based on the contract. Defendant assigns as error an order striking one of its affirmative defenses. In answer to plaintiff's original complaint, defendant, as an affirmative defense, asserted:

> "Plaintiff assumed the risk of unexpected difficulties in the performance of the contract by agreeing to examine the plans, specifications, special provisions, and site of the work."

Plaintiff moved to strike this defense, arguing that the doctrine of assumption of risk had been abolished. *Hornbeck v. Western States Fire Apparatus* 280 Or 647, 572 P2d 620 (1977); ORS 18.475. Although the record is unclear,[1] it appears that defendant's "assumption of risk of unexpected difficulties" defense was based on a provision from the red book. Section 102.05 provides, in part:

> " * * * The bidder is expected to examine carefully the site of the proposed work, the proposal, plans, specifications, supplemental specifications, special provisions and contract forms before submitting a proposal. The submission of a bid shall be considered prima facie evidence that the bidder has made such examination and is satisfied as to the conditions to be encountered in performing the work and as to the requirements of the plans, specifications, supplemental specifications, special provisions (including completion time) and contract.
>
> "The [County], its officers and employees, will in no case be responsible for any loss or for any unanticipated costs that may be suffered by the contractor as a result of the contractor's failure to fully inform himself in regard to all conditions pertaining to the work."

■■ The trial court erred in striking the defense. Although in tort cases *implied* assumption of risk has been

---

[1] There is no memorandum by defendant, nor is there a record of any colloquy concerning the motion to strike.

abolished, here the defense was based on an *express* assumption of responsibility under a contract. *See Blair v. Mt. Hood Meadows Development Corp.*, 291 Or 293, 630 P2d 827 *modified* 291 Or 703, 634 P2d 241 (1981). The contract placed the burden of unexpected difficulties on plaintiff who assumed the responsibility to examine the bridge and determine the surface conditions. Although section 102.5 may not constitute a complete defense against all of plaintiff's claims, defendant was entitled to assert it as a defense.

Plaintiff argues that the trial court's ruling was not erroneous "since the plaintiff is not suing for money under the contract, any contractual assumption of risk provision should have no bearing on its case; a contractual risk allocation cannot bar recovery on plaintiff's claims which are not based on that contract." Plaintiff contends that its claim was based on recovery in *quantum meruit* and thus is not controlled by the contract provisions. We disagree. The county's defense is that plaintiff agreed in the contract to absorb the costs which it seeks to recover. The county is not asserting the contractual provision as a defense to a claim for the reasonable value of any extra work performed outside the contract. Plaintiff cannot escape its agreement to absorb the overage by claiming the contract does not apply in a *quantum meruit* action to recover that overage. The case must be reversed and remanded to allow defendant to assert the contractual assumption of risk defense. Because the following assignments of error pertain to issues which may arise on retrial, we address them briefly.

■ Defendant appeals the sustaining of plaintiff's objection to the admission in evidence of section 107.21 of the red book. The section provides:

"107.21 Responsibility for Damage Claims - The contractor shall indemnify and save harmless the Division, its officers and employees, from all suits, actions or claims of any character brought because of any injuries or damage received or sustained by any person, persons or property on account of the operations of the said contractor, his subcontractors or the employees of either; or on account of or in consequence of any neglect in safeguarding the work; or because of any act or omission, neglect or misconduct of said contractor * * *."

Plaintiff argues that this "hold harmless" clause is irrelevant and was properly excluded because there was no issue in this case of indemnification for any damage claims brought against defendant.

A portion of plaintiff's claimed additional costs involved damage, denoted "overspray expenses," to cars caused by plaintiff's painting activities that plaintiff paid. The red book sections admitted in evidence, sections 107.18 and 107.19, made plaintiff responsible for damages to property in performing the contract. The purpose of section 107.21 is to protect the county against claims or lawsuits brought by third persons against it as a result of the contractor's negligence. There is no contention in this case that any such lawsuits were ever filed against the county. Defendant made no claim against plaintiff for indemnity. The disputes involved here dealt instead with claims filed against the contractor, the disposition of which are covered in sections 107.18 and 107.19 of the contract. The court did not err in sustaining plaintiff's objection.

■ Defendant also assigns as error the admission in evidence of a letter by plaintiff's attorney to defendant describing the ongoing difficulties with the painting job and providing a preliminary estimate of the loss on the project. Defendant argued at trial that the letter was irrelevant because it "is talking about expenses that have been incurred rather than expenses to be incurred." Under the contract, section 109.05, written notice of additional compensation must be made *before* any extra expense to be claimed is incurred. The letter was relevant to whether notice of extra compensation was given. Assuming such notice was necessary for recovery under plaintiff's various theories, whether the letter satisfied section 109.05 was for the jury to decide.[2]

Defendant claims error in numerous jury instructions given by the trial court. Although the instructions given were not as specific as defendant sought, we believe

---

[2] It is interesting to note that defendant argues that the prejudice caused by admission of the letter was defendant's inability to obtain a directed verdict on the issue of notice. No denial of a motion for directed verdict is assigned as error. Further, it is difficult to understand how admission of irrelevant evidence would foreclose defendant's ability to obtain a directed verdict.

they were sufficient to inform the jury of the various affirmative defenses with the exception, of course, of the court's refusal to permit defendant's defense of "assumption of risk."

Reversed and remanded.