Argued and submitted July 20, 2020, reversed and remanded May 25, 2022

Crisshawn CLARK,
*Plaintiff-Appellant,*

*v.*

UNIVERSITY OF OREGON,
Dana Altman, Josh Jamieson,
Kevin McKenna, Mike Meggenga,
and Tony Stubblefield,
*Defendants-Respondents.*

Lane County Circuit Court
17CV45539; A170086

512 P3d 457

Plaintiff suffered a knee injury while a University of Oregon basketball coach put him through a basketball drill during a visit to the university's basketball program. He brought a claim for negligence against the university and five employees of its basketball program. The trial court granted summary judgment for defendants, reasoning that, as a matter of law, plaintiff's injury resulted solely from normal risks of playing basketball and that defendants could not be liable for an injury caused by such risks. The trial court also denied plaintiff's motion to amend the complaint and denied plaintiff's motion for summary judgment on defendants' affirmative defense of "comparative fault/contributory negligence." On appeal, plaintiff contends that the trial court erred in all of those respects. *Held*: It is squarely within the province of the jury to assess the reasonableness of defendants' conduct and the foreseeability of the risk of harm to plaintiff. Thus, the trial court erred in granting summary judgment for defendants. The court abused its discretion in denying the motion for leave to amend the complaint. The court erred in denying plaintiff's motion for summary judgment on the defense of "comparative fault/contributory negligence."

Reversed and remanded.

R. Curtis Conover, Judge.

Brent Barton argued the cause for appellant. Also on the briefs was Travis Eiva.

Cody M. Weston argued the cause for respondents. Also on the brief were Stephen F. English, Matthew J. Mertens, and Perkins Coie LLP.

Before Tookey, Presiding Judge, and Egan, Judge, and Aoyagi, Judge.*

_____
  * Egan, J., *vice* Armstrong, S. J.

EGAN, J.

Reversed and remanded.

**EGAN, J.**

Plaintiff suffered a knee injury while a University of Oregon basketball coach put him through a basketball drill during a visit to the university's basketball program. He brought a claim for negligence against the university and five employees of its basketball program. The trial court granted summary judgment for defendants, reasoning that, as a matter of law, plaintiff's injury resulted solely from normal risks of playing basketball and that defendants could not be liable for an injury caused by such risks. The trial court also denied plaintiff's motion to amend the complaint and denied plaintiff's motion for summary judgment on defendants' affirmative defense of "comparative fault/contributory negligence." On appeal, plaintiff contends that the trial court erred in all of those respects. As explained below, we agree and, accordingly, reverse and remand.

On review of the grant of a motion for summary judgment, we view the record in the light most favorable to the nonmoving party, here, plaintiff. *Jennewein v. MCIMetro Access Transmission Services*, 308 Or App 396, 400, 481 P3d 939 (2021). The facts are undisputed for purposes of defendants' motion for summary judgment and this appeal. While plaintiff was enrolled in a junior college and was on that college's basketball team, the University of Oregon's basketball coaches invited him to make an official visit to the university to see the school facilities and meet the coaches and the team. At dinner on the first night of plaintiff's visit, defendant Mennenga, an assistant coach, asked plaintiff if he had ever had any surgeries. Plaintiff responded that he had both of his knees "scoped" after the previous basketball season. After dinner, Mennenga drove plaintiff back to his hotel and, during the drive, told plaintiff that Mennenga and plaintiff would do a basketball workout the next morning.

The next morning, Mennenga picked plaintiff up from his hotel and drove him to defendant's basketball arena. There, plaintiff spoke to defendant Altman, the head coach, and mentioned that Mennenga intended to have him do a workout. Altman did not object or interfere. After providing plaintiff with workout gear, Mennenga had plaintiff do several basketball drills on the court. Defendants

Stubblefield, an assistant coach, and Jamieson, the Director of Basketball Operations for the university, watched plaintiff play. For the third drill, Mennenga instructed plaintiff to drive the ball toward the basket, collide with Mennenga, continue driving through the opposition, and lay the ball in the basket. On the fourth repetition of that drill, Mennenga bumped plaintiff's chest as he drove to the basket, setting plaintiff off-balance and causing plaintiff to feel a snap in his knee. His anterior cruciate ligament was torn.

While plaintiff was on the ground after the injury, he saw Stubblefield and Jamieson immediately stand up from their seats and leave the gym. After the workout, Mennenga told plaintiff that he, Mennenga, had made a mistake. Defendants admitted that Mennenga's workout with plaintiff was impermissible under National Collegiate Athletic Association (NCAA) rules, and the university intended to sanction Mennenga for that conduct.

In the complaint that was operative when defendants moved for summary judgment, plaintiff alleged that defendants were negligent in the following ways:

"a.   Failing to take reasonable steps to avoid injuring Plaintiff;

"b.   Endangering Plaintiff needlessly;

"c.   Hitting/fouling Plaintiff during a basketball drill in a way that was not reasonable under the circumstances;

"d.   Organizing a basketball workout at a time that was not reasonable under the circumstances;

"e.   Failing to perform a medical evaluation or otherwise medically clear Plaintiff before he worked out;

"f.   Behaving in a manner that was unreasonable based upon the circumstances;

"g.   Violating NCAA Bylaw 13.11 *et seq*, which Defendants knew or should have known about, in at least two ways:

"i.   Allowing and/or requiring Plaintiff to workout/tryout/display his athletic abilities on his official visit while he had remaining eligibility to play basketball at [the junior college]; and

"ii.   Allowing Plaintiff to workout/tryout/display his athletic abilities on his official visit before obtaining the required medical clearance.

"h.   U of O violated NCAA Constitution Articles 2 and 6 and NCAA Bylaw 19.2 *et seq.*

"i.   Head Coach Altman violated NCAA Bylaw 11.1.1.1."

Defendants moved for summary judgment, contending that physical contact like the contact between Mennenga and plaintiff during the basketball drill "is a normal, inevitable and inherent risk of playing basketball, and as a matter of law, injury resulting from such contact is not actionable." Plaintiff responded that defendants' argument was incorrect under Oregon law for two reasons: first, because it implicitly rested on the doctrine of implied assumption of the risk, a doctrine that the legislature abolished in 1975, and second, because, under the framework established in *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 4, 734 P2d 1326 (1987), the question of a defendant's "duty" to a plaintiff is properly subsumed in the question whether the defendant's conduct unreasonably created a foreseeable risk of harm to a protected interest of the plaintiff, and that question is committed to the jury except in "extreme case[s]." *Donaca v. Curry County*, 303 Or 30, 38, 734 P2d 1339 (1987); *see also id.* ("[B]roadly phrased arguments over 'duty' in common-law negligence tend to turn into a disputed rule of law what properly is a determination of the ordinary issues of negligence liability: whether defendant's conduct caused a foreseeable kind of harm to an interest protected against that kind of negligent invasion, and whether the conduct creating the risk of that kind of harm was unreasonable under the circumstances.").

The trial court agreed with defendants, granted their motion for summary judgment, and entered a judgment of dismissal. Plaintiff appeals, contending, in his first assignment of error, that the trial court erred in granting defendants' motion for summary judgment.

We review a trial court's grant of summary judgment to determine whether there are any issues of material fact and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Jennewein*, 308 Or App at

400. Here, we consider whether the facts, viewed in the light most favorable to plaintiff, establish that defendants are entitled to judgment as a matter of law.

A few years before the Supreme Court announced a new approach to negligence liability in *Fazzolari*, it addressed the role of the inherent risks of a sports activity in negligence in *Blair v. Mt. Hood Meadows Development Corp.*, 291 Or 293, 630 P2d 827, *modified on recons*, 291 Or 703, 634 P2d 241 (1981). The plaintiff in *Blair* had been injured after he accidentally skied off of a run at the defendant's ski resort, and he alleged that the defendant had been negligent in several ways relating to its maintenance and marking of the ski run. *Id.* at 295. The defendant requested, and the trial court gave, a jury instruction stating, "'Sports activities involve some risks. Every person who takes part in a sport accepts and submits himself to the dangers that are inherent or a reasonable part of that sport.'" *Id.* at 296. The jury returned a verdict for the defendant. *Id.*

The plaintiff appealed, and we held that the instruction was partially correct; we distinguished the type of assumption of the risk addressed by the instruction from the "'implied assumption of the risk' abolished by [*former*] ORS 18.475(2) [(1979), *renumbered as* ORS 31.620 (2003)]."[1] *Id.* However, we concluded that the instruction was too broad because "it failed to inform the jury that a sports participant assumes only those risks which are 'necessary to the sport and are known to him.'" *Id.*

The plaintiff sought review in the Supreme Court. The court considered "whether any instruction concerning risks assumed by virtue of participation in sports activities is proper" in light of the legislative abolition of the doctrine of implied assumption of the risk. *Id.* at 296-97. It explained its previous holdings regarding the effect of *former* ORS 18.475(2) (1979), noting that it had held that the statute prohibited a defendant from relying on a plaintiff's implicit assumption of the risk of an activity regardless of where in the negligence analysis the defendant sought to apply it—as

[1] That statute provides, "The doctrine of implied assumption of the risk is abolished." ORS 31.620(2). After *Blair* was decided, the legislature enacted provisions specific to assumption of the risk while skiing, ORS 30.970 to 30.990.

contributory negligence or as "a counterpart to no duty." *Id.* at 297.

Further, the court noted that, in *Thompson v. Weaver*, 277 Or 299, 305, 560 P2d 620 (1977), it had rejected the defendant's attempt to characterize an assumption-of-the-risk principle as an absence of duty. The defendant in *Thompson* contended that he owed no duty to the plaintiff because the plaintiff had "voluntarily [gotten] under a mobile home which had been improperly raised by jacks." *Blair*, 291 Or at 297. The *Blair* court explained,

> "An absence of duty on the part of the defendant, like the bar formerly raised by the doctrine of assumption of risk, would have completely defeated plaintiff's recovery for negligence. We held that since the enactment of [*former*] ORS 18.475(2) [(1979)] this type of conduct of the plaintiff may reduce liability, if at all, under [comparative fault] only and is no longer a complete defense to a negligence action *even when recharacterized as an 'absence' of or limitation upon duty*."

291 Or at 297-98 (emphasis added).

Then the court noted that, in previous cases, it had expressly left undecided the specific question presented in *Blair*: the effect of *former* ORS 18.475(2) (1979) in "situations where a 'plaintiff has agreed to join in an activity (such as a sporting event) in which the particular hazard is a known element of the activity even when properly conducted[.]'" *Id*. at 298 (quoting *Thompson*, 277 Or at 305). After considering the text of the statute and its legislative history, the court concluded that that context was similar to the other contexts that it had already addressed: "[T]he legislature intended to abolish all use of the concept of plaintiff's assumption of risk in negligence cases (other than in its 'express' sense) whether as a a defense to defendant's prior 'tortious' conduct or as a shorthand phrase for defendant's lack of duty under the circumstances or breach of duty." *Id*. at 300 (internal footnote omitted).

Consequently, the court explained, "the focus of the analysis in [a case where a plaintiff voluntarily participates in an activity in which the hazard is a known element of the activity] has shifted entirely to the defendant's duty

under the circumstances and should no longer be discussed in terms of the plaintiff's assumption of the risk." *Blair*, 291 Or at 301. Because the challenged instruction focused on the plaintiff's conduct rather than the defendant's duty, the trial court erred in giving it. *Id.* at 303.[2]

To summarize, in *Blair*, the court held that a plaintiff's voluntary engagement in an activity in which the hazard is a known element of the activity "is no longer a complete defense to a negligence action even when recharacterized as an absence of or limitation upon duty." 291 Or at 297-98 (internal quotation marks omitted). However, the court reasoned, although a plaintiff's voluntary engagement in such an activity does not categorically exclude the possibility that a defendant owes the plaintiff a duty, a court or jury is not prohibited from considering the risks inherent in an activity as part of the duty or breach elements of a negligence claim: "[T]he fact that a sports participant's injury results from a risk which is an element of a sport even when properly conducted may continue to defeat recovery for negligence because the defendant's duty in the context of the sport may not extend to protecting against such risks." *Id.* at 302.

As we understand defendants' argument, they contend that *Blair* left open the possibility that, as a matter of law, a defendant's duty in the context of an injury that occurs during a sport activity never extends to protecting against a risk that is an element of the sport. Defendants contend that we should adopt such a rule in this case. As explained below, we decline to do so.

In *Fazzolari*, the court replaced its previous conception of the elements of a negligence claim with a framework focused on foreseeability:

"In short, unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a

---

[2] Despite that conclusion, the court declined to reverse and remand for a new trial because it concluded that the plaintiff had not excepted to the instruction on that precise ground. *Id.* at 303-04.

foreseeable risk to a protected interest of the kind of harm that befell the plaintiff.”

303 Or at 17. More recently, the court explained that that framework brings together

> “two overlapping common-law negligence determinations: (1) whether the defendant’s conduct unreasonably created a foreseeable risk of harm to a protected interest of the plaintiff such that the defendant may be held liable for that conduct—formerly described in terms of ‘duty’ and ‘breach’ as measures of negligent conduct; and (2) whether, because the risk of harm was reasonably foreseeable, the defendant may be held liable to the plaintiff for the particular harm that befell the plaintiff—a concept that traditionally was referred to as ‘proximate’ cause and which, in our current analytical framework, operates as a legal limit on the scope of a defendant’s liability for negligent conduct.”

*Piazza v. Kellim*, 360 Or 58, 70, 377 P3d 492 (2016).

The question of whether a defendant’s conduct “unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff,” *Fazzolari*, 303 Or at 17, is a normative one; that is, determination of that question is laden with social values. *Piazza*, 360 Or at 70 n 6. For that reason, that question is committed to the jury in all situations except those “at the outer margins.” *Fazzolari*, 303 Or at 12. In other words, “ ‘[t]he community’s judgment, usually given voice by a jury, determines whether the defendant’s conduct met that threshold in the factual circumstances of any particular case.’ ‘The court intervenes only when it can say that the actor’s conduct clearly meets the standard or clearly falls below it.’ ” *Piazza*, 360 Or at 73-74 (internal citation omitted; quoting *Chapman v. Mayfield*, 358 Or 196, 206, 361 P3d 566 (2015), and *Fazzolari*, 303 Or at 18).

When a defendant’s conduct cannot reasonably be viewed as anything beyond ordinary participation in a sports activity, perhaps the case is one at the outer margins, in which it may be appropriate for the court to intervene at the summary judgment stage. That is, where the defendant’s conduct, viewed in the light most favorable to the plaintiff, falls completely within the ordinary parameters

of the sports activity, it may be that the defendant's conduct is not unreasonable under the specific circumstances, as a matter of law. However, contrary to defendants' argument in this case, no special rule of law is necessary to achieve that outcome; the outcome is determined by application of *Fazzolari*'s analytical framework.

In any event, this case presents a scenario different from ordinary participation in a sports activity. Here, viewing the facts in the light most favorable to plaintiff, defendants invited plaintiff to visit the university, informed him that he would be engaging in basketball workouts with coaches, devised a series of drills for him to complete, instructed him on how to perform the drills, physically participated in the drills, and, in the course of the drills, performed the act that injured plaintiff. Defendants did those acts despite their knowledge of plaintiff's previous knee surgery and despite the fact that most of the acts, including the act of allowing or requiring plaintiff to participate in any workout with coaches at all, violated NCAA rules. The conduct by defendants that plaintiff alleges unreasonably created a foreseeable risk of harm to him goes beyond ordinary participation in a sports activity. It is squarely within the province of the jury to assess the reasonableness of defendants' conduct and the foreseeability of the risk of harm to plaintiff. Thus, the trial court erred in granting summary judgment for defendants.

Next we consider plaintiff's second assignment of error, in which he contends that the court erred in denying, in part, plaintiff's motion for leave to file an amended complaint alleging an additional claim against the university and defendant Altman, the head coach, for negligent supervision. The newly alleged negligent supervision resulted in the same injury to plaintiff—his torn ACL—through the same specific cause—Mennenga's bump of plaintiff during a basketball drill—as the original negligence claim. As explained below, we conclude that the court abused its discretion in denying plaintiff's motion to amend the complaint.

As we understand it, the trial court agreed with defendants that the negligent supervision claim that plaintiff sought to add was (1) beyond the scope of his tort claim

notice and (2) filed outside the statute of limitations because it did not relate back to the original complaint. Although our overall review of the trial court's decision is for abuse of discretion, *Eklof v. Persson*, 369 Or 531, 537, 508 P3d 468 (2022), we review legal questions underlying that ultimate discretionary choice for legal error, *see id.* at 543-54 (evaluating the legal questions underlying the court's discretionary choice for legal error); *Cowan v. Nordyke*, 232 Or App 384, 386, 222 P3d 1093 (2009), *rev den*, 348 Or 114 (2010) ("[W]hen the denial [of a motion to amend] results from a substantive legal conclusion, we review the correctness of that conclusion for errors of law." (Internal quotation marks omitted.)).

ORCP 23 A provides that, after a first amendment allowed as a matter of right within a certain period of time, "a party may amend the pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The parties address the four factors that we articulated in *Ramsey v. Thompson*, 162 Or App 139, 986 P2d 54 (1999), *rev den*, 329 Or 589 (2000), as constraining a court's discretion in considering a motion for leave to amend. *See id.* at 145 (courts should consider "(1) the nature of the proposed amendments and their relationship to the existing pleadings; (2) the prejudice, if any, to the opposing party; (3) the timing of the proposed amendments and related docketing concerns; and (4) the colorable merit of the proposed amendments").

After argument in this case, the Supreme Court decided *Eklof*, 369 Or 531, in which it held that the *Ramsey* factors do not properly direct a court's exercise of its discretion. The court explained that "the gravamen of the inquiry under ORCP 23 A is prejudice to the opposing party," and the merit of the proposed amendments "is relevant only insofar as ORCP 23 A permits leave to be denied for futile amendments." *Eklof*, 369 Or at 533. The court further explained that "a futile claim is one that could not prevail on the merits due to some failing in the pleadings or some unavoidable bar or obstacle."[3] *Id.* at 543-44.

---

[3] In *Eklof*, the court went on to address what materials are proper for a court to consider in evaluating the futility of a proposed amendment and how to

Given the Supreme Court's guidance in *Eklof*, we understand the parties' arguments about the tort claim notice and the statute of limitations to go to whether the proposed amendment was futile. As explained below, the court's conclusions on both of those issues were legally erroneous; plaintiff's proposed amendment was not futile.

As to the tort claim notice, defendants contended below, and contend again on appeal, that not every fact relevant to the negligent supervision claim was stated in plaintiff's tort claim notice. Defendants cite no legal authority for the proposition that a plaintiff must state in the tort claim notice every single fact within the plaintiff's knowledge that may prove relevant to the plaintiff's claim, and we are aware of none. *See* ORS 30.275(4)(b) (formal notice to a public body must include "[a] description of the time, place and circumstances giving rise to the claim, so far as known to the claimant"). The trial court erred in concluding that plaintiff's tort claim notice did not encompass a negligent supervision claim.

As to the statute of limitations, defendants contended below, and again argue on appeal, that plaintiff's negligent supervision claim was filed outside of the statute of limitations and does not relate back to the filing of the original complaint. Plaintiff agrees that the amended complaint was timely only if it related back.

Defendants contend that plaintiff's original complaint did not give them notice of the negligent supervision claim, because the negligent supervision claim involves events that took place on days other than the day when plaintiff was injured. We disagree with defendants' characterization of the scope of the original complaint. The original complaint alleged facts—including facts about the conduct of Altman, Stubblefield, Jamieson, McKenna, and Mennenga—and specifications of negligence that put defendants on notice that plaintiff's claim asserted that negligent supervision of the university basketball program led to plaintiff's injury. *See, e.g.*, *Concienne v. Asante*, 273 Or App

---

analyze them. *Id.* at 545-54. In this case, there is no dispute about what materials should have been considered or how to consider them, so we do not recount that part of the Supreme Court's opinion.

331, 341, 359 P3d 407 (2015) (amended complaint related back when the new allegations added more particularity about how the defendant was negligent but concerned the same predicate facts and the same injury). The court erred in concluding that the amended complaint would not relate back to the filing of the original complaint. Thus, the proposed amendment was not futile.

"[L]eave [to amend] shall be freely given when justice so requires." ORCP 23 A. "[T]he gravamen of the inquiry under ORCP 23 A is prejudice to the opposing party," and a court may also consider whether the proposed amendment is futile. *Eklof*, 369 Or at 533. In this case, the amendment was not futile. Moreover, defendants did not raise, nor did the court identify, any way in which defendants would be prejudiced by the proposed amendment beyond the purported lack of notice of the negligent supervision claim, which we have rejected as inconsistent with the original complaint. Accordingly, the court abused its discretion in denying the motion for leave to amend the complaint to state a claim for negligent supervision.

Finally, we address plaintiff's third assignment of error, in which he contends that the trial court erred in denying his motion for summary judgment on defendants' defense of "comparative fault/contributory negligence," because defendants presented no evidence to support that defense. At the summary judgment hearing, defendants attempted to withdraw the defense, but the trial court urged them to reconsider, and they did; the trial court subsequently denied plaintiff's motion. On appeal, defendants do not defend the merits of that ruling. We agree with plaintiff that there was no evidence in the record to support the defense—as defense counsel recognized below and again on appeal. The trial court erred in denying plaintiff's motion for summary judgment in that respect.

Reversed and remanded.