487 P.2d 936

Ray ALBERS, as parent and natural guardian of Morris Albers, a Minor, Plaintiff-Appellant,

v.

INDEPENDENT SCHOOL DISTRICT NUMBER 302 OF LEWIS COUNTY, Idaho, Defendant-Respondent.

No. 10802.

Supreme Court of Idaho.
July 30, 1971.

Leslie T. McCarthy, Lewiston, for plaintiff-appellant.

Jerry V. Smith, Lewiston, for defendant-respondent.

McFADDEN, Justice.

This action was instituted by appellant Ray Albers, the father of Morris Albers, a minor, to recover damages from Independent School District No. 302 of Lewis County, respondent, for personal injuries suffered by his son Morris. A motion for summary judgment was made by the school district which the trial court granted. We affirm this judgment.

The pertinent portions of the record consist of appellant's amended complaint, the deposition of Morris Albers taken by the school district, the deposition of Richard F. Omans, who is both the superintendent of respondent school district and the principal of the district's high school.

Appellant in his amended complaint set out the status of the parties, and alleged that Morris, his son, had participated in a basketball game in the school district gymnasium. Appellant further alleged that Morris was seriously injured during the course of this game, necessitating extensive medical treatment and expense. Appellant alleged that the injuries to his son were the direct and proximate result of the district's negligence, in (1) failing to provide teacher supervision of the game, (2) allowing the participants in the game to play on a dirty playing surface made dangerous by puddles of water caused by a leaky roof, and (3) by not having suitable equipment available for their use.

The record discloses that on December 23, 1967, during the Christmas holiday, Morris Albers, with five other boys, drove to the high school gymnasium of the district with the intention of playing an informal basketball game. Upon arrival they found the entrance locked; however, the custodian was working on the premises and was persuaded, perhaps reluctantly, to open the door and let the youths use the basketball court. The custodian went about his cleaning duties after admitting the boys.

Morris undertook to clean the playing surface of the gymnasium, by sweeping the court with a wide dust mop or broom for five or ten minutes, while his friends changed clothes. The boys then engaged in warming up activities, shooting baskets, using two worn leather basketballs which they found lying about, the equipment room of the gymnasium being locked.

At the time Morris was wearing standard basketball shoes and slacks. He was a member of the high school basketball team, an accomplished high school athlete, and participated in several other team sports. At least one of the other five boys was a teammate of his on the basketball team.

After warming up the boys split into two teams and played a "half-court" basketball game. Morris' deposition reflects that "it was a real clean game" from the standpoint of fouls and close calls. Sometime into their play a shot came off the backboard and "headed out towards [the] out of bounds line on the east side of the gym." Morris and an opposing player ran for the loose ball. As Morris reached to pick it up the two boys collided, Morris hitting his head against his opponent's hip. Morris fell to the floor on his back in a semi-conscious state. Morris suffered a fracture in the cervical area of his spine necessitating surgical correction and prolonged hospitalization.

Appellant contends the trial court erred in granting summary judgment against him, asserting there were questions of fact upon which reasonable men could differ.

Respondent admits that the custodian disregarded a policy of the school by permitting the boys to use the gymnasium. However, the school district claims that lack of supervision was not the cause of the accident and further, that neither the physical conditions of the court nor the old basketball were legally causative of the injury.

Respondent points to the following statements made by Morris in his deposition, which negate the allegations of appellant's complaint.

On the issue of teacher supervision:

"Q. Are these games that you played between yourselves, do they have an inclination to be rougher than other games that are played that are refereed by [sic] and supervised?

A. I don't think you could make a generality like that sir. Some games probably are and some aren't.

Q. Do you have any recollection about this particular time at least up to the time of your injury?

A. It was a fairly smooth game, I guess, up until the time because there was [sic] no arguments or anything and there just wasn't [sic] any close calls or anything. It just went real smooth."

On the issue of the worn basketball appellant contends bounced erratically:

"Q. Do you recall whether the ball changed course or direction at all prior to the time that you got up and reached for the ball? Got up near enough to reach for it? [Referring to the instant before the boys collided.]

A. It just hit the floor and headed for the out of bounds. I don't know whether it changed or not. It was just headed for the out of bounds marking.

Q. Did it continue on a—same line from the time that it went from the backboard and bounced—headed for the out of bounds line?

A. To the best of my recollection, yes."

On the issue of the slippery playing floor:

"Q. Okeh. Now, at the time that you were cleaning the floor, did you observe any water spots or anything of that nature on the floor?

A. Not to my recollection, sir."

■ Generally, schools owe a duty to supervise the activities of their students whether they be engaged in curricular activities or non-required but school sponsored extra-curricular activities. *Carabba v. Anacortes School Dist. No. 103*, 72 Wash.2d 939, 435 P.2d 936 (1967). See Annot. 86 A.L.R.2d 489. Further, a school must exercise ordinary care to keep its premises and facilities in reasonably safe condition for the use of minors who foreseeably will make use of the premises and facilities. *Anneker v. Quinn-Robbins Co.*, 80 Idaho 1, 323 P.2d 1073 (1958). Annot. 34 A.L.R.3d 1166. However, we offer no opinion on the question of whether schools must provide supervision under the circumstances before us for reasons stated hereafter.

■■ On the claim that the school district breached its duty to supervise the boys' game, the record lacks any evidence

as to how the presence of a coach or teacher would have prevented the collision of the boys chasing the rebounding basketball. Tardiff v. Shoreline School Dist., 68 Wash.2d 164, 411 P.2d 889 (1966); Vendrell v. School Dist., 233 Or. 1, 376 P.2d 406 (1962). Physical contact in such a situation in an athletic contest is foreseeable and expected. The general rule is that participants in an athletic contest accept the normal physical contact of the particular sport. Gaspard v. Grain Dealers Mut. Ins. Co., 131 So.2d 831 (Ct.App.La. 1961); Annot. 35 A.L.R.3d 725; Annot. 7 A.L.R.2d 704; Moe v. Steenberg, 275 Minn. 448, 147 N.W.2d 587 (1966); 65A C.J.S. Negligence § 174(6), p. 302. Nothing in the record would justify an exception to the rule here.

Regarding the allegation that the school district was negligent in allowing the youths to play on a dirty playing surface, the deposition of Morris Albers and his statements quoted above show there was no breach of any such duty. He had personally cleaned the floor and stated he saw no water spots or anything of that nature on the floor.

 The deposition of appellant's son taken by the respondents refutes the allegations of negligence in the amended complaint. Appellant made no counter showing to these statements by way of affidavit or deposition. The respondent as the moving party had the "burden of establishing that the material facts [were] not in dispute" (Driggers v. Business Men's Assurance Co. of America, 219 F.2d 292, 299 (5th Cir. 1955), cited in Christiansen v. Rumsey, 91 Idaho 684, 429 P.2d 416 (1967)), and respondent met its burden of showing the absence of any genuine issue of material fact. Under the law as applied to the undisputed facts respondent was entitled to summary judgment, and the court did not err in entering summary judgment for respondent. I.R.C.P. 56(c). Petricevich v. Salmon River Canal Co., 92 Idaho 865, 452 P.2d 362 (1969).

A procedural issue has been raised by the respondent by way of a motion to dismiss the appeal. Respondent points out that the transcript on appeal fails to contain a certificate in accordance with Supreme Court Rule 35. Appellant's error is not to be taken lightly, but here it is obviated by a statement in the district judge's order granting summary judgment specifying the documents considered by him in ruling on the motion. Those documents are part of the record before this court and therefore the record is complete. The motion to dismiss is denied. See Kootenai County v. Hope Lumber Co., 13 Idaho 262, 89 P. 1054 (1907).

The summary judgment of the trial court is affirmed. Costs to respondent.

McQUADE, C. J., and DONALDSON, SHEPARD and SPEAR, JJ., concur.