639 A.2d 223

**TAWANA HAMMOND, et al.**

v.

**BOARD OF EDUCATION OF CARROLL COUNTY, Maryland.**

**No. 1306, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

April 7, 1994.

William D. Kurtz and Neil J. Bixler (Verderaime & DuBois, P.A., Baltimore, Daniel H. Green and Davis, Murphy, Weisse & Green, Eldersburg, on the brief), for appellants.

Edmund J. O'Meally and George L. Huber, Jr. (William J. Kobokovich, Jr., Huber & Lutche, P.A., and Blum, Yumkas, Mailman, Gutman & Denick, P.A., on the brief), Baltimore, for appellee.

Argued before WILNER, C.J., and GARRITY and MOTZ, JJ.

MOTZ, Judge.

On August 25, 1989, appellant, Tawana Hammond, the first female high school football player in Carroll County history, was injured in her team's initial scrimmage. Three years later, Tawana and her mother, appellant Peggy Hammond,

(collectively, the Hammonds) filed suit in the Circuit Court for Carroll County against appellee, the Board of Education of Carroll County (the Board), seeking $1.25 million in compensatory damages. The Hammonds asserted (1) that the high school authorities negligently failed to warn them of the potential risk of injury inherent in playing football and (2) that if they had been so warned Tawana would not have chosen to play football and her mother would not have permitted her to do so.[1] After the parties conducted discovery, the Board moved for summary judgment, which the circuit court (Beck, J.) granted.

The record reveals that the underlying material facts are not disputed. Sixteen-year-old Tawana tried out for the Francis Scott Key High School varsity football team in the summer of 1989, prior to the beginning of her junior year in high school. Although Tawana had previously participated in a number of track events and played softball and soccer, she had never engaged in any contact sports. Tawana had watched football on television since she was six years old but did not become interested in football until her freshman year in high school; she had never observed any "really serious" injuries in these televised games, only a "twisted ankle or something." She saw a half dozen high school games during her freshman and sophomore years and saw no players hurt at those games. Tawana knew football was a "physical contact sport" and determined she wanted to play it because "[i]t was different."

In order for a student to play sports at Francis Scott Key High School, the student and the student's parent must sign a document entitled "Francis Scott Key High School Athletic Regulations and Permission Form." Both Tawana and her father, John Hammond (not a party herein), signed this form on June 18, 1989. The permission form states that the student has read the school handbook and regulations and agrees to abide by them and that the parent has read them

---

1. The Hammonds also made a negligent misrepresentation claim as to insurance coverage, which was settled.

and "consents" to the child's participation in the sport. One sentence in the permission form specifically states that "[w]e do our very best to avoid accidents, but we realize that in the normal course of events, some occur." In deposition, Tawana testified that she read the permission form and, in particular, this sentence before she started playing football and understood that she "could get a broken leg, [or] broken arm" as a result of playing varsity, tackle football.

The permission form also requires that "[e]ach participating athlete must have a special examination" by the family physician and "must be found physically fit" and "must also have parent/guardian permission to participate." Tawana submitted the required "Carroll County Public Schools Athletic Participation Health Examination Form" signed by her doctor on July 31, 1989; in it her doctor certified that she was "physically able" to compete in a list of sports, including football. Moreover, on that same date Tawana's mother, a certified nurse's aide, whose older son played football at Francis Scott Key High School until "he sprained his leg," signed the participation form. On that form, Ms. Hammond gave her "consent" for Tawana to play the several sports listed, including football. Ms. Hammond acknowledged in deposition that "injury was [her] biggest fear" for Tawana, i.e., "like [a] broken leg, [or] broken arms," but that she never communicated her fears to Tawana and believed Tawana "should be allowed to do whatever it was she wanted to do."

Throughout the summer of 1989, Tawana participated in the team's weight lifting program along with the other varsity football players. She was happy with the progress that she was making in her strength training and had no concerns or fears that she would not be physically strong enough to compete on the playing field. Practice began in August. On the first day of practice, which involved some contact drills, Tawana, along with the rest of the team, was instructed by the head coach, not to tackle, block or "do anything" with the neck because "you could get a neck injury." After the first practice, a meeting was conducted for the parents of the players. Tawana and both of her parents attended that meeting, at

which an official gave a presentation discussing the possibility of serious injury to the neck if the head were used for blocking or tackling.

As practices continued, Tawana had no difficulty in keeping up physically with the other players on the team. On August 25, 1989, Tawana, along with the rest of the Francis Scott Key High School varsity football team, travelled to Anne Arundel County for the team's first practice scrimmage. Prior to the scrimmage, Tawana was interviewed by a television reporter and stated that "[p]laying football is a tough sport. I do have to admit that." During the scrimmage, while carrying the ball, Tawana was tackled by a rival player and sustained multiple internal injuries including a ruptured spleen. Her spleen and part of her pancreas were removed, and she was hospitalized for some time.

On August 13, 1992, Tawana and her mother filed this suit. The circuit court granted summary judgment to the Board, concluding that (a) it had no duty to warn "of the risk of serious, disabling and catastrophic injury associated with play-ing on a high-school-varsity, tackle, football team;" (b) if there was a duty to warn the Hammonds it was satisfied; and (c) Tawana and her mother assumed the risk of injury as a matter of law.

On appeal, Tawana and her mother raise three questions:

1. Did the lower court err when it held, as a matter of law, that based on the appellants' training, intelligence, and experience the appellee owed no duty to warn the appel-lants of the risks of serious, disabling, and catastrophic injuries involved in participating in interscholastic high school football?

2. Did the lower court err when it held, as a matter of law, that the appellee fulfilled its duty to warn the appellants of the nature and extent of serious injury involved in participating in interscholastic high school football?

3. Did the lower court err in ruling, as a matter of law, that the appellants had assumed the risk of the appellant Tawana Hammond's injuries when there was sufficient

other evidence presented which created an issue of triable fact as to each appellant?

The central theory espoused by the Hammonds, that the school board had a duty to warn them of the severe injuries that might result from voluntarily [2] participating on a varsity high school tackle football team, is one that, as far as we can determine, has never been adopted by any court in this country.

There are, to be sure, numerous cases in which minors injured while playing in school sporting events have sued school officials (or others similarly situated) asserting that the officials' negligence caused the participant's injuries. *See e.g., Albers v. Independent Sch. Dist. No. 302 of Lewis County,* 94 Idaho 342, 487 P.2d 936 (1971); *Leahy v. School Bd. of Hernando County,* 450 So.2d 883 (Fla.Dist.Ct.App.1984); *Hale v. Davies,* 80 Ga.App. 126, 70 S.E.2d 923 (1952); *Kluka v. Livingston Parish Sch. Bd.,* 433 So.2d 302 (La.Ct.App.), *cert. denied,* 440 So.2d 728 (La.1983); *Benitez v. New York City Bd. of Educ.,* 73 N.Y.2d 650, 543 N.Y.S.2d 29, 541 N.E.2d 29 (1989); *Tepper v. City of New Rochelle Sch. Dist.,* 143 A.D.2d 133, 531 N.Y.S.2d 367 (1988); *Barrett v. Phillips,* 29 N.C.App. 220, 223 S.E.2d 918 (1976); *Whipple v. Salvation Army,* 261 Or. 453, 495 P.2d 739 (1972) (in banc); *Vendrell v. School Dist. No. 26C,* 233 Or. 1, 376 P.2d 406 (1962) (in banc); *Rutter v. Northeastern Beaver County Sch. Dist.,* 496 Pa. 590, 437 A.2d 1198 (1981); *Brackman v. Adrian,* 63 Tenn.App. 346, 472 S.W.2d 735 (1971). In none of these cases, however, have the plaintiffs successfully asserted that the school officials were negligent because of some failure to warn the plaintiffs of the

---

**2.** We note that different considerations may apply when an injury occurs during compulsory physical education classes rather than during voluntary participation in school athletic contests because, while a student usually is required to attend physical education classes and drills, a participant chooses to participate in voluntary games, and so can avoid them if he or she is weak, slow, disabled, etc. *See Benitez v. New York City Bd. of Educ.,* 73 N.Y.2d 650, 543 N.Y.S.2d 29, 33, 541 N.E.2d 29 (1989); *Passantino v. Board of Educ.,* 52 A.D.2d 935, 383 N.Y.S.2d 639, 641–42 (1976), *rev'd on dissenting opinion,* 41 N.Y.2d 1022, 395 N.Y.S.2d 628, 363 N.E.2d 1373 (1977).

possible dangers involved in voluntarily participating in the contact sport. In the past, plaintiffs have made claims of negligence because of asserted inadequate or improper supervision, *Benitez, Rutter, Whipple, Albers, Leahy, Barrett, Brackman,* inadequate instruction or training, *Rutter, Whipple, Vendrell, Leahy, Brackman, Hale,* and inadequate equipment, *Rutter, Whipple, Albers, Leahy, Brackman, Vendrell,* but the parties have not cited and we have not uncovered any case in which a plaintiff, in circumstances similar to the Hammonds, has successfully made a negligence claim based on a failure to warn of possible physical injury.

 Perhaps this is because permeating the sports injury cases is the recognition that "[p]hysical contact in . . . an athletic contest is foreseeable and expected." *Albers,* 487 P.2d at 939. The "general rule is that participants in an athletic contest accept the normal physical contact of the particular sport." *Id.* Absent evidence of "mental deficiency," and there is no claim that Tawana is not at least of average intelligence, minors are held to "sufficiently appreciate[ ] the dangers inherent in the game of football," *Whipple,* 495 P.2d at 743, to know that "football is a rough and hazardous game and that anyone playing or practicing such a game may be injured," *Hale,* 70 S.E.2d at 925, and that "[f]atigue, and unfortunately, injury are inherent in team competitive sports, especially football." *Benitez,* 543 N.Y.S.2d at 34, 541 N.E.2d at 34. Thus, it is "common knowledge that children participating in games . . . may injure themselves and . . . no amount of supervision . . . will avoid some such injuries, and the law does not make a school the insurer of the safety of pupils at play." *Brackman,* 472 S.W.2d at 739. As the Supreme Court of Oregon explained in rejecting a similar claim by a fifteen-year-old injured in a football game,

> The playing of football is a body-contact sport. The game demands that the players come into physical contact with each other constantly, frequently with great force . . . the ball-carrier . . . must be prepared to strike the ground violently. Body contacts, bruises, and clashes are inherent in the game. There is no other way to play it. No

prospective player need be told that a participant in the game of football may sustain injury. That fact is self[-]evident.

*Vendrell,* 376 P.2d at 412–13.

For these reasons, courts have been extremely inhospitable to claims that properly equipped, injured high school players should be able to recover from school officials for injuries sustained during an ordinary, voluntary contact sport game. Thus, in the vast majority of such cases,[3] it has been held that those asserting such claims cannot recover as a matter of law. *See Albers,* 487 P.2d at 937 (summary judgment for school district affirmed in suit brought by fifteen year old "seriously injured" during a school basketball game); *Hale,* 70 S.E.2d at 926 (holding that trial court properly sustained demurrer to claim by sixteen-year-old injured in football practice); *Kluka,* 433 So.2d at 304–05 (reversing judgment for high school student whose ankle was broken in a wrestling match); *Benitez,* 543 N.Y.S.2d at 30, 541 N.E.2d at 30 (reversing a jury verdict in excess of $800,000 for a 19 year old who suffered a broken neck in a varsity football game); *Barrett,* 223 S.E.2d at 919 (affirming grant of summary judgment to defendants in suit brought by estate of high school football player who died from injuries inflicted by a twenty-year-old rival player who was incorrectly listed as eligible to play); *Whipple,* 495 P.2d at 743–44 (directed verdict for defendant affirmed in case brought by fifteen-year-old who injured a knee in youth program football game); *Vendrell,* 376 P.2d at 412–14 (reversing a verdict for fifteen-year-old who fractured his neck in high school football game); *Brackman,* 472 S.W.2d at 741 (reversing jury verdict for fourteen-year-old girl injured in a softball game).

---

**3.** The exceptions involve claims not made here and facts not remotely similar to those in the case at hand. *See e.g., Tepper,* 531 N.Y.S.2d at 368 (summary judgment for defendants reversed when it was asserted that a coach was negligent in permitting a lacrosse player "of slight build and very limited experience, to go head-to-head [during a practice drill] with the 260–pound senior varsity team member, a player possessing substantially greater experience").

██ The Hammonds largely ignore the above authority. Instead, they heavily rely on *Eisel v. Board of Education of Montgomery County*, 324 Md. 376, 597 A.2d 447 (1991). There the Court of Appeals held that, when school officials "are on notice of a child or adolescent student's suicidal intent," they have a duty to use reasonable means—including warning the child's parents of the contemplated suicide—to attempt to prevent the suicide. *Id.* at 393, 597 A.2d 447. The Hammonds argue that "the legal theory asserted . . . in *Eisel* is no different from that asserted . . . in this case." It is true that a duty to warn is asserted in both cases, but *Eisel* presents a factual basis for this theory vastly different than the one at hand.

In *Eisel*, it was asserted that the school officials had actual knowledge that a pupil intended to commit suicide, knowledge that the child's parents did not have. The Board here had no actual knowledge of any impending harm to Tawana, let alone any impending *intentional* harm. If the Board had learned that Tawana intended to injure herself or that a rival player intended to injure or illegally hit her, then it, like the school authorities in *Eisel*, well might have had a duty to warn Tawana and her parents. The Hammonds, however, do not even suggest that the Board had such knowledge or, indeed, that Tawana was injured because of some intentional act. *Eisel* is inapposite. It does not in any way undercut the fundamental principle that there is no duty to warn of obvious risks.

██ That principle is well established in Maryland. The Court of Appeals explained more than twenty-five years ago that when a pleading alleges a danger that is "ordinary and obvious," it has not sufficiently alleged "circumstances which would require the defendants to give a warning." *Read Drug & Chem. Co. v. Colwill Constr. Co.*, 250 Md. 406, 417, 243 A.2d 548 (1968); *see also Figgie Int'l, Inc. v. Tognocchi*, 96 Md.App. 228, 240, 624 A.2d 1285, *cert. denied*, 332 Md. 381, 631 A.2d 451 (1993) (in Maryland "there is no duty to warn someone of an obvious danger"). Thus, when a plaintiff asserted that a

construction company was negligent in failing to warn her of the danger of walking on a wooden plank walkway, the Court rejected the claim concluding:

> Unless any dangerous implications arising from the presence of the board were such as not to be obvious to ordinary observation by a person in the position of Mrs. Brooks, there would be no primary negligence. The usual nature of planks is so well known and the use of planks as walkways is so usual, that Colwill was entitled to assume, in the absence of any facts other than those alleged in the declaration, that pedestrians are as familiar with the usual aspects and consequences of the use of planks as a walkway as was Colwill.
>
> . . . .
>
> In the declaration in the present case, there is no hazard alleged other than the normal, obvious and usual incidents of the use of a plank as a walkway and this is not a sufficient allegation of any duty on the part of Colwill to Mrs. Brooks.

*Read Drug & Chem. Co.*, 250 Md. at 417–18, 243 A.2d 548. Here, too, the hazard alleged—the possibility of injury to a voluntary participant in a varsity high school tackle, football game—was "the normal, obvious and usual incident[ ]" of the activity. Accordingly, here as in *Read,* there was no duty on the part of the defendant to warn of this possibility.

In light of our conclusion that the Board had no duty to warn the Hammonds, we need not reach the question of whether Tawana assumed the risk as a matter of law. We do note, however, that there is case law supporting the circuit court's conclusion that she did. *See e.g., Whipple,* 495 P.2d at 743; *Vendrell,* 376 P.2d at 414; *Kluka,* 433 So.2d at 304; *Hale,* 70 S.E.2d at 925. *See also Nesbitt v. Bethesda Country Club, Inc.,* 20 Md.App. 226, 232, 314 A.2d 738 (1974) (quoting 4 Am.Jur.2d, *Amusements & Exhibitions* § 98 ("[a] voluntary participant in any lawful game, sport or contest, in legal contemplation by the fact of his participation, assumes all risks

incidental to the game, sport or contest which are obvious and foreseeable.").[4]

Although she has not stated a cause of action against the Board, Tawana's injuries were serious, painful, and permanent. We regret them and sympathize with her. Our holding here, that school officials have no duty to warn a student or the student's parents that serious injury might result from the student's voluntary participation on a high school varsity tackle football team, does not mean that such a warning would not be a sound idea as a matter of public policy. Young men—and women—of the same age, who wish to participate in the same team contact sports, vary considerably in weight and size; unfortunately, the sport may occasionally pit the brawniest against the most slender.[5] In view of the very serious injuries suffered by Tawana, school officials may well want to consider issuing a warning of the possibility of such injuries—even though there is no legal obligation to do so.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.

---

**4.** Again, this situation is to be contrasted with a student's arguable lack of assumption of risk in compulsory physical education classes. *See Benitez*, 543 N.Y.S.2d at 33, 541 N.E.2d at 33; *Passantino*, 383 N.Y.S.2d at 641.

**5.** The Hammonds have not asserted that they were entitled to any additional warning or consideration because Tawana is a young woman and we do not suggest that there is any basis for such an argument. Moreover, there is nothing in this record to suggest that Tawana's injuries were different or more severe because of her sex.